(162 App. Div. 725)

### ANDERSON v. WEBER et al.    (No. 5853.)

(Supreme Court, Appellate Division, First Department.    May 29, 1914.)

1. JOINT ADVENTURES (§ 7*)—JOINT ADVENTURERS—POWER OF ONE TO BIND ANOTHER.

Where the inventor and patentee of a gas engine and his financial backer jointly licensed plaintiff to manufacture such engines, under an agreement providing for the building of an experimental engine within a stipulated time, and obligating the inventor and his financial backer to reimburse plaintiff in case the engine was not a success, the inventor and his backer were joint adventurers, and an agreement by one extending the time for experimentation was binding on the other.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 8; Dec. Dig. § 7.*]

2. PATENTS (§ 219*)—CONTRACTS—CONSTRUCTION—EXTENSIONS—EFFECT.

Where the patentees of a gas engine licensed plaintiff to manufacture them on a royalty basis, the agreement providing for the building of an experimental engine within a stipulated time and for the payment of the minimum royalties at the end of that time, the licensee otherwise to lose his right to demand reimbursement for the building of the engine in case it should be unsuccessful, an agreement, allowing an extension of four months for the payment of the minimum royalty, is an agreement for extension of the time of experiment and plaintiff can, at the end of that time, claim reimbursement for the building of the engine, the project proving unsuccessful.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 339–349; Dec. Dig. § 219.*]

Appeal from Trial Term, New York County.

Action by Ernest D. Anderson against Richard Weber and another. From an order setting aside the verdict against the defendant Weber, and a judgment dismissing the complaint as to him, plaintiff appeals. Order and judgment reversed, and verdict reinstated.

See, also, 159 App. Div. 905, 144 N. Y. Supp. 1103.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Ely & Fuller, of New York City (Charles Fuller, of New York City, of counsel), for appellant.

Mann, Buxbaum & Schoonharr (Isidore Buxbaum, of Brooklyn, of counsel), for respondent.

CLARKE, J.    The complaint alleges that on the 22d of October, 1910, the plaintiff and defendants entered into a written agreement by which the said defendants granted to the plaintiff, for a valuable consideration, the sole and exclusive right to make, use, and sell the invention of the said defendant Rabsilber relating to certain internal combustion or explosive engines, as in said agreement indicated; that, among other things, the said defendants agreed to furnish to the plain-

tiff a complete set of working drawings for the building of a four-cylinder engine embodying the inventions covered by said agreement, for which the plaintiff agreed to pay the sum of $250 upon delivery, which condition he performed; that the plaintiff agreed to build one four-cylinder engine in accordance with the said drawings delivered to him by the defendants as soon as practicable, and to install said engine, when built, in an automobile; that it was further agreed that in the event of the surrender or forfeiture by the plaintiff of the license granted on or before February 1, 1912, said engine should become the property of the said defendants upon payment by them to the plaintiff, within six months after such surrender or forfeiture, of the total disbursements made or incurred by him in and about the building of said engine; that plaintiff duly received the working drawings, and began the construction of said engine, and has expended the sum of $5,000 in the building thereof; that on November 15, 1911, plaintiff surrendered the said license to the defendants, and in accordance with the aforesaid agreement the defendants took over the working drawings of the said engine, the engine itself, and the automobile parts in which it was installed, and agreed to pay the plaintiff the amount of his disbursements; that more than six months have elapsed since the defendants took over the said engine, patterns, and drawings and automobile parts, but the defendants have not paid the plaintiff the disbursements expended by him, or any part thereof.

In addition to the matter set up in the complaint the written contract between the plaintiff and defendants contained the following provisions, inter alia. The written agreement was made between William Rabsilber and Richard Weber, parties of the first part and Ernest D. Anderson, party of the second part. It provided that:

"Whereas, the said Rabsilber is the inventor of certain inventions relating to internal combustion or explosive engines" [identifying and describing them]; and whereas, the parties of the first part are the owners of the entire right, title and interest in and to said inventions, applications and letters patent and all rights relating thereto; and whereas, the party of the second part desires to acquire the sole and exclusive license and right to make, use and sell the said inventions under the terms hereinafter stated. * * * The parties of the first part do hereby give and grant to the party of the second part the sole and exclusive license and right within and throughout the United States of America, its several states, territories and possessions and the Dominion of Canada, and any and all other countries and places of and in the Western Hemisphere, to make, use and sell for any and every purpose, use and object, the inventions of the said Rabsilber relating to internal combustion or explosive engines hereinbefore and hereinafter indicated."

The license was to be for a period of one year from the 1st of October, 1910, and to be ipso facto automatically renewed and continued, from year to year during the full term of each and every patent granted or to be granted for any and all the aforesaid inventions by and upon payment on the 1st day of October of each year, beginning in the year 1911, of the yearly minimum royalty specified.

The party of the second part agreed to pay to the parties of the first part a royalty in the sum of $50 for each engine sold under the license granted, except and provided that said royalty shall be in the sum

of $30 for each engine having a piston displacement of 120 cubic inches, or less.

"It is understood and agreed by and between the parties hereto, that the minimum amount of royalties to be paid by the party of the second part to the parties of the first part in order to insure against the revocation or forfeiture of the license hereby granted, shall be as follows:

"Ten thousand dollars for the year ending October 1st, 1912, due October 1st, 1911.

"Twenty thousand dollars for the year ending October 1st 1913, due October 1st, 1912.

"Thirty thousand dollars for the year ending October 1st, 1914, due October 1st, 1913.

"Forty thousand dollars for the year ending October 1st, 1915, due October 1st, 1914.

"Fifty thousand dollars for the year ending October 1st, 1916, due October 1st, 1915, and

"Fifty thousand dollars for each year thereafter, during the life of this license agreement, payable in advance."

Under this contract plaintiff began the work of building the engine. In April, 1911, the engine was assembled, but it did not run. It was intended to use therein heavy oils. Changes were made upon consultation between the plaintiff and Mr. Rabsilber, the inventor. It was altered from a three-port engine to a two-port engine. In August the engine was still incomplete.

Under the contract the plaintiff's license would expire on the 1st of October unless he paid the minimum amount of royalties agreed to be paid on that day of $10,000; if he surrendered or forfeited his license on or before the 1st of October, he was to receive a repayment of the disbursements made or incurred by him in the building of the engine. Although the engine was not successful as originally designed, the parties still had faith, and continued working thereon. In the latter part of July or the beginning of August the plaintiff had a conversation with Mr. Rabsilber. He testified:

"The conversation was that the engine was not complete, was not working; that there had been a great deal of money expended on it, and that I would have to have an extension contract to complete the work; that it was nearly done, and of course Mr. Rabsilber realized it, and he said I should have an extension of the contract."

In consequence thereof Mr. Rabsilber delivered the following paper, which he had drawn up himself, to the plaintiff:

"Bklyn, N. Y. Aug. 11, 1911.

"Mr. E. D. Anderson, 56 High St., Bklyn., N. Y.—Dear Sir: We hereby agree to allow you an extension of four months for the terms of payment fixed in the agreement of October 22nd, 1910, between you, Mr. Richard Weber and Mr. William Rabsilber.

"Yours truly,                    William Rabsilber.
                                 "Richard Weber."

Thereafter the plaintiff continued with his attempts to construct a working engine. He testified that in September:

"I said to Mr. Rabsilber that I was dissatisfied with the way the engine was working, and he said if I was dissatisfied, they would take the engine back; Mr. Rabsilber and Mr. Weber would take the engine and avail themselves of the contract, and pay me the money expended on it. I said I was

not satisfied to give up my year's labor on that without having some business advantage, and I preferred to experiment a little longer before losing all my work, and that time."

There were further conversations, until in November this occurred:

"I stated that I was dissatisfied with the outcome of the whole thing, and he said [referring to Rabsilber] they would take the engine back, and reimburse me for the money expended, and I said, 'Very well: you have the engine.' And he said, 'We take the engine.' 'And I had a talk with Mr. Weber, and we have agreed to take the engine back, and pay you for the money expended on it.' "

The amount of disbursements were proved, and the court submitted the case to the jury, charging them:

"Unless there was this extension of four months, the plaintiff, under the law, cannot recover because he is bound by the terms of his original contract."

[1] The jury found a verdict for the plaintiff for $3,271.50. Thereafter, upon motion, the court set aside the verdict and dismissed the complaint as against Weber, upon the ground that Rabsilber had no power to modify the terms of the contract, and that the written paper was simply an extension of four months for the payment of the minimum amount of royalties, and was not an extension of time for the plaintiff to construct the engine, but declined to grant the motion so far as Rabsilber was concerned, holding that the verdict of the jury upon conflicting evidence as to the agreement to accept the engine and pay plaintiff's expenses was not against the evidence or the weight thereof.

[2] I am of the opinion, from the terms of the contract itself, and from all the evidence in the case, that Weber and Rabsilber were joint adventurers, and that in their dealings with Anderson regarding the contract each was the agent for the other. It is apparent that while Rabsilber was the inventor, Weber was the financial backer. The contract sets forth that the parties of the first part are the owners of the entire right, title, and interest in and to said inventions, applications, letters patent, and all rights relating thereto. They jointly granted the license to the plaintiff, who was to pay the sums agreed upon to them. They were therefore to participate in the profits of the enterprise, and they agreed to pay the disbursement made or incurred by the plaintiff in and about the building of said engine, under certain contingencies; that is, they agreed to share the expenses or losses of the enterprise. That was sufficient to constitute each the agent of the other in matters strictly within the limits of the joint adventure, so far as a third party was concerned. I do not think that the written extension should be given the limited interpretation put upon it. While in terms it extended the time in which the plaintiff was required to make his first minimum payment of royalties or forfeit the whole contract, it must be borne in mind that all the parties were endeavoring to make a successful engine for the benefit of all. What was really asked for and what was really intended to be given was an extension of the period of experimentation in the hope of ultimate success. Reading the whole contract, and taking into consideration the fact that it was the defendants who drew the form of this extension, a fair interpretation

of it is that it was, and was intended to be, an extension, not only of the terms of payment, but of all the provisions of the contract, so as to cover as well the provisions for payment of expenditures upon surrender or forfeiture of the license, within the extended period of .four months, as if made before the 1st of October.

As the learned trial court found no fault with the decision of the jury upon the other questions of fact, but set aside the verdict, as to Weber solely, upon its interpretation of the contract, and circumstances that the relation between the defendants was not that of partners or joint adventurers, so as to make Rabsilber the agent of Weber in the transaction so far as the plaintiff was concerned, and as we think that conclusion was erroneous, it follows that the order appealed from should be reversed, and the verdict reinstated, and so much of the judgment as dismisses the complaint against Weber should be reversed, and judgment ordered upon the verdict, with costs to the appellant against the respondent Weber. All concur.